SCOTT E. BRADFORD
United States Attorney
District of Oregon
**WILLIAM M. McLAREN, OSB #143836**
William.McLaren@usdoj.gov
Assistant United States Attorney
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone: (541) 465-6771
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **6:25-cr-00414-MC** |
| **v.** | **UNITED STATES' SENTENCING MEMORANDUM** |
| **LEONIAS JUBER RAMOS-GARCIA,** | |
| **Defendant.** | **Sentencing: May 14, 2026, at 1:30 p.m.** |

Leonias Ramos-Garcia, 26, met a minor, lied about his age, and exchanged messages in which he overcame the minor's reluctance to have sex with him.  Mr. Ramos-Garcia enticed the minor with intense affection and assurance of marriage.  When the minor expressed convictions against premarital sex, Mr. Ramos-Garcia promised secrecy and eternal love.  When the minor moved away, Mr. Ramos-Garcia drove hours across state lines to pick up the minor, go to a hotel, have sex, and then drop off the minor before sunrise.

To hold Mr. Ramos-Garcia accountable for his criminal choices, the government recommends the Court sentence him to a low-end guidelines sentence of imprisonment and a five-year term of supervised release.  His actions demand accountability.

**United States' Sentencing Memorandum**                                    **Page 1**

## BACKGROUND

The facts are accurately set forth in paragraphs 17-29 of the presentence investigation report ("PSR"). To promote the Minor Victim's ("MV") anonymity, certain details have been omitted from this public filing including gender, age, and specific cities. All details are known can be provided and clarified upon inquiry from the Court.

### A.    Initiation of Investigation

In late May 2025, a father ("Adult Witness 1" or "AW1") contacted Central Oregon law enforcement to report that Mr. Ramos-Garcia engaged in a sexual relationship with his child, MV. AW1 reported that Mr. Ramos-Garcia met MV at a specific business and developed a friendly relationship that eventually became sexual. PSR ¶ 17. In June 2025, local law enforcement alerted federal authorities after learning that Mr. Ramos-Garcia had traveled from Oregon to Washington to have sex with the minor. *Id.* 18.

Federal authorities began investigating the situation. They obtained and reviewed text messages and a Washington hotel invoice containing a scanned copy of Mr. Ramos-Garcia's Oregon driver's license. In mid-June, MV provided a child forensic interview in which MV explained that Mr. Ramos-Garcia initially approached and asked for MV's phone number. After MV informed him of being a minor, MV recalled Mr. Ramos-Garcia's friends telling MV that Mr. Ramos-Garcia would "wait" until MV was 18. He did not do that. PSR ¶ 20.

In or about February 2025, Mr. Ramos-Garcia gave MV a cologne-sprayed note professing his love in which he enclosed twenty dollars. A contemporaneous conversation between MV and a friend corroborates that MV informed Mr. Ramos-Garcia of being underage. MV also wondered aloud whether he was "toxic" or a "love bomber," and expressed concern about an adult being interested in a minor. Mr. Ramos-Garcia offered to pick up MV at MV's

house, which MV eventually allowed.  During the forensic interview, MV recalled Mr. Ramos-Garcia at one point asking MV whether there were cameras there.  PSR ¶ 21.

Later that month, Mr. Ramos-Garcia and MV began exchanging text messages. Investigators obtained the text messages which are apparently translated, with MV writing English messages translated to Spanish and Mr. Ramos-Garcia writing Spanish messages translated to English.  This is consistent with MV's recollection.

**B.    Initial Text Messages and First Hotel**

On March 9, 2025, Mr. Ramos-Garcia had lengthy text message conversations with MV in which Mr. Ramos-Garcia expressed his desire to have sex with MV, acknowledging MV's "rules" about not having premarital sex but nonetheless professing his reasons for wanting to have sex with MV.  Mr. Ramos-Garcia promised "love [MV] for my whole life," and apparently ensured MV that sex would be secretive, that he would take certain measures to avoid detection, and the act would not result in any religious or community consequences.  All the while, Mr. Ramos-Garcia knew MV's age: "This is legal for us to marry when you are 18 years old or illegal in your religion or Oregon laws, I can know this."  *Sealed* ECF No. 1 at ¶ 12.b. (this is a translated message received by MV on February 24, 2025).

Following that exchange, later in March 2025, Mr. Ramos-Garcia secured a hotel room in Oregon and engaged in sexual acts with MV.  PSR ¶ 22.  He preceded that by assuring MV that their hotel rendezvous would be secret, including making plans to avoid detection by hotel staff—for instance, by not allowing them to see MV and having MV enter the room area directly from the parking lot.  MV recalled that Mr. Ramos-Garcia secured a room at what MV remembered as a "Hotel 6," with a room number of 215 or 217, in MV's recollection.  *Id.* ¶ 22. Agents later found a Motel 6 room key in Mr. Ramos-Garcia's residence, for room number 217.

**United States' Sentencing Memorandum**                                                            **Page 3**

In the forensic interview, MV recalled saying no to some of Mr. Ramos-Garcia's sexual advances, and recalled Mr. Ramos-Garcia requiring a "reason" when MV would say no.  PSR ¶ 21. MV also recalled Mr. Ramos-Garcia engaging in pressured physical contact despite reluctance, including grabbing MV's hand to engage in sex acts.  *Id.*

Around the time of the sexual encounter, in later March 2025, the text messages reflect that Mr. Ramos-Garcia confessed to having lied to MV about being younger than his actual age—22 as opposed to 25:

> "Mommy, I want to confess something very big that I lied to you and I said it because my friend told me to say it, but he told me to tell you that I was your age and I told him that I could not do that, I said it because I would think this was not going to work, but now I realize that we are on a good road and I do not want to hide it anymore, I love only in this one, I deserve it when we got a slap on Friday, I deserve it, but I hope you will blind me by seeing how I always drink, I't not me. I promise you that it is only this, I want to be loyal and sincere, but I am not 22 and I am not much more, I'm a hundred, who's perfect age, please, , do not react badly, take it from the side, but I ask you for it."

*Sealed* ECF No. 1 at ¶ 12.d. (this is a translated message received by MV on March 20, 2025)

When MV attempted to say goodbye to Mr. Ramos-Garcia after learning his true age, he begged MV to stay, professing his love and despair.  PSR ¶ 25.

### C.    Washington Trip and Second Hotel

In April 2025, MV moved from Oregon to Washington (PSR ¶ 19) and Mr. Ramos-Garcia sent overtly sexual messages, requests, and references to the March hotel rendezvous.

On April 18, 2025, Mr. Ramos-Garcia drove from Oregon to Washington and took MV to a second hotel room, this time in the area near MV's new home.  He picked up MV, took MV to the hotel, engaged in sexual acts, took MV back home in the early-morning hours, picked up MV the following day, engaged in additional sexual acts, then returned MV again on April 20, 2025.

**United States' Sentencing Memorandum**                                    **Page 4**

A particular text message Mr. Ramos-Garcia sent MV that day reveals guilty conscience:

> And my biggest fear is that your parents will realize that I am with you now and I do not know what might happen, I think that they will take me to jail and I do not want to be in prison, but I know that it will never happen, I know that we are both taking good care of each other, we have our very well controlled relationship.

PSR ¶ 26.

Mr. Ramos-Garcia's interstate trip in April was recounted by MV and corroborated by his messages, which include celebrations of sex, a reference to the precise city in Washington in which Mr. Ramos-Garcia secured the hotel and to which he took MV, and references to Mr. Ramos-Garcia eating food left behind at the hotel by MV. *Id.* They are further corroborated by a hotel invoice with Mr. Ramos-Garcia's scanned ID.

The following week, AW1 and MV reported the situation to law enforcement.

**D.    Identification of Ramos-Garcia and Search Warrant**

Agents attempted to determine Mr. Ramos-Garcia's criminal history and identified that he is a Guatemalan national who does not have United States citizenship and does not have authorization to be present in the United States.

Surveillance revealed Mr. Ramos-Garcia worked a construction job in the Jefferson County area and identified his residence. In late June 2025, the Hon. John V. Acosta authorized a federal search warrant for Ramos-Garcia's residence, person, and the truck he used for the interstate travel, as well as a complaint and arrest warrant.

On July 1, 2025, agents executed the search warrant and located Mr. Ramos-Garcia's phone that contained his text messages with MV and photographs of MV. Upon arrest, and after being advised pursuant to *Miranda*, Mr. Ramos-Garcia confirmed a monthslong relationship

**United States' Sentencing Memorandum**                                                        **Page 5**

with MV, confirmed his travel to Washington, and confirmed engaging in sexual acts with MV in both Oregon and Washington.  Mr. Ramos-Garcia has remained in custody since that date.

## THE CHARGES & GUIDELINE COMPUTATIONS

Mr. Ramos-Garcia pleaded guilty to Count One of an Information charging him with Traveling with Intent to Illicit Sexual Conduct, in violation of 18 U.S.C. § 2423(b).  That charge carries a maximum sentence of thirty years' imprisonment, a $250,000 fine, and a term of supervised release of five years to life.

The parties' stipulated guidelines are set forth below, outlined in the Plea Agreement at ¶ 8, and correctly set forth in the PSR at ¶¶ 35–43:

| Guidelines | Amount |
|---|---|
| Base Offense Level [USSG § 2G1.3(a)(4)] | 24 |
| Commission of sexual act [§ 2G1.3(b)(4)(A)] | +2 |
| Acceptance of responsibility [§ 3E1.1(a) and (b)] | -3 |
| **Total Offense Level** | **23** |

Taken with a Criminal History Category of I, that Total Offense Level results in an advisory guideline range of 46-57 months' imprisonment.  Accordingly, the government recommends a low-end 46 months, as does Probation.  PSR at 1.  The parties made no agreement to a term of supervised release, but the government adopts Probation's recommendation of 5 years' supervision to follow.  In the event Mr. Ramos-Garcia is removed from the United States and elects to return, such a term will impose accountability beyond immigration consequences and will appropriately require Mr. Ramos-Garcia to appear before this Court.

MV and MV's family have elected not to assert a restitution request in this matter.

/ / /

**United States' Sentencing Memorandum**                                                                 **Page 6**

## ARGUMENT

Mr. Ramos-Garcia, though relatively young and a first-time offender, targeted a vulnerable minor.  He used advances and promises to charm his victim and offer security in the face of MV's clarity about being young and unready for what Mr. Ramos-Garcia sought.  He acknowledged the legal consequences of his acts while committing them.  Instead of abstaining, or "waiting" as he promised MV, he chose to seek out the privacy of hotel rooms and assurances secrecy and ever-lasting love when MV challenged the notion of sex.

The evidence and messages do not reflect that MV leapt willingly at Mr. Ramos-Garcia's advances.  Instead, they reflect Mr. Ramos-Garcia's consistent efforts operated to slowly erode MV's hesitation.  Finally, he chose to lie about being younger than his actual age and, when he shared the truth with MV, begged to carry on the relationship and unlawful sexual encounters.

Mr. Ramos-Garcia's words best show his awareness of the unlawfulness of the acts he attempted to carry out in secrecy: "And my biggest fear is that your parents will realize that I am with you now and I do not know what might happen, I think that they will take me to jail and I do not want to be in prison." *Sealed* ECF No. 1 at ¶ 16 (this is a translated message received by MV on April 20, 2025).  Despite this fear, Mr. Ramos-Garcia drove several hours to take MV from MV's home in Washington to a nearby hotel, engage in sex, return MV, wait, pick up MV again, and repeat.

The government acknowledges that, given Mr. Ramos-Garcia's age in relation to MV's, this child exploitation case is dissimilar from matters in which child sexual predators are much older and their victims are much younger.  Mr. Ramos-Garcia's relative youth and upbringing in a country with lax age-of-consent laws, taken with his apparent desire for an actual relationship with MV, all begin to explain his acts, but they do not excuse them.  He persisted despite

knowing MV's age, lied about his own age, persuaded MV to push past deeply-held concerns and beliefs, and ultimately acted on his sexual desires despite knowing the illegality of his acts. His questions about cameras and fears of MV's parents finding out reflect that knowledge.

A sentence consistent with other individuals who have violated this statute is sufficient but not greater than necessary.  As reflected in the PSR at pp. 1, the low-end guidelines sentence—which is the government's recommendation—is also the median sentence for similarly-situated defendants.  Mr. Ramos-Garcia's acceptance of responsibility and willingness to be forthcoming to authorities are commendable.  But his actions deserve accountability beyond a brief time out and removal from the United States, they deserve a low-end term.

This experience could have shattered MV.  Fortunately, MV is resilient, astute, and exceptionally emotionally intelligent.  Nonetheless, Mr. Ramos-Garcia's choice to darken MV's bright skies by committing these offenses should result in proportionate consequences.  The government's recommended sentence reflects those consequences and achieves accountability.

## CONCLUSION

For the reasons stated above, the government recommends a low-end prison sentence, a five-year term of supervised release, and a $100 fee assessment.

Dated: May 6, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

/s/ *William M. McLaren*
WILLIAM M. McLAREN
Assistant United States Attorney